USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-23-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

               -against-

YOUNG SON IM,

               Defendant.

07 Cr. 737 (PKC)
12 Civ. 7757 (PKC)

MEMORANDUM AND ORDER

CASTEL, District Judge:

    Young Son Im was convicted at trial of conspiring to distribute and possess with intent to distribute fifty grams and more of methamphetamine, 21 U.S.C. § 846, and received a sentence of principally 72 months imprisonment. Im moves to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255. Much of the background necessary to an understanding of the present motion is set forth in this Court's Memorandum and Order (07 Cr. 737 Dkt 112), which addressed defendant's motion for a judgment of acquittal, motion for a new trial and claims of ineffective assistance of counsel by trial counsel. United States v. Im, 07 Cr. 737 (PKC) 2009 WL 2191231 (S.D.N.Y., July 17, 2009), aff'd sub nom United States v. Chun, 399 F. App'x 669 (2d Cir. 2010), cert. denied, 132 S. Ct. 292 (2011).

    The history of Im's representation is relevant to certain of his claims. Im was initially represented by Bennett Epstein (8/14/07-11/6/07), CJA appointed counsel, who was replaced by retained counsel, Howard Leader (11/6/07-8/25/08). Mr. Leader was replaced by newly-retained counsel, Jeffrey Cohn (8/25/08-3/30/09), who continued through trial. Following trial, Mr. Cohn was replaced, at Im's request, with appointed CJA counsel, Mark Stein, who,

Emailed to Mr. Im

together with others at his firm, Simpson Thacher & Bartlett LLP, represented Im on the post-verdict motions,[1] sentencing and appeal.

Prior to sentencing, Im participated in "safety valve" proffers, admitting his role in the methamphetamine conspiracy and other drug trafficking activities. He was found to be truthful by the government at the proffer sessions, received a downward departure and, as noted, received a sentence of principally 72 months imprisonment, a sentence substantially below the advisory guideline range of 97 months to 121 months imprisonment.

PRESENT APPLICATION

Im's pro se motion consists of a court-approved form motion, which is 14 pages in length to which there is a 21-page attachment or "insert." He has also filed a 37-page memorandum of law. The government has helpfully and accurately catalogued the various claims (which will be referred to herein as "Claim __") as follows:

1. The government failed to provide Im or his counsel with certain English-language translations of various recorded conversations and/or phone calls prior to trial. (Insert 1-2; Br. 7-10.)

2. The government presented the jury with perjured testimony and false evidence. (Insert 2-11; Br. 10-25.)

3. (a) The government and/or the Court failed to unseal certain Title III-related documents properly. (Insert 11-14; Br. 25-28.) (b) Im's counsel was ineffective in failing to raise this misconduct. (Insert 19; Br. 35.)

4. (a) The Court demonstrated improper bias by declining to reopen Im's motion schedule.

---

[1] Defendant claimed, among other things, that Mr. Leader was ineffective for failing to request discovery and failing to move to suppress wiretap evidence and that Mr. Cohn was ineffective for failing to bring a Korean interpreter to meetings with defendant and failing to provide defendant with certain discovery.

2

(Insert 14-17; Br. 28-31.)  (b) Im's appellate counsel was ineffective for failing to raise this issue on appeal.  (Insert 20; Br. 35.)

5. (a) This Court deprived Im of his liberty without due process of law because the transcript for a bail hearing does not indicate the presence of a Korean interpreter.  (Insert 17-18; Br. 31-32.)  (b) Im's counsel was ineffective for failing to object to the absence of an interpreter.  (Insert 20; Br. 35.)

6. (a) This Court improperly denied Im's request to present all of the recordings between him and a confidential informant – in their entirety and in Korean – at trial.  (Insert 18-19, 20-21; Br. 32).  (b) Im's counsel was ineffective for failing to object to the Court's decision.  (Insert 20; Br. 36.)

7. This Court improperly instructed the jury that the recordings presented as evidence were made in a lawful manner and was otherwise biased in its statements to the jury.  (Insert 19; Br. 32-35.)

8. Im's counsel was ineffective for failing to argue that the judicial signatures on certain Title III-related documents were forgeries.  (Insert 19-20; Br. 35).

DISCUSSION

A. Matters That Could Have Been Raised On Direct Appeal

It is settled law that a defendant must raise an error at trial on direct appeal from his conviction or it is procedurally barred unless (1) he can demonstrate cause for not raising it and prejudice from the failure to raise it, Campino v. United States, 968 F.2d 187, 189 (2d Cir. 1992); or (2) he makes a supported claim of actual innocence.  Fountain v. United States, 357 F.3d 250, 254 (2d Cir. 2004) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).  The rule applies to constitutional errors as well.  Campino, 968 F. 2d at 190.  "[I]nterests of finality,

3

accuracy, integrity of prior proceedings, and judicial economy justify a district court's refusal to entertain a § 2255 action containing a procedurally barred claim, absent a showing of cause and prejudice." Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 633 (2d Cir. 2001).

There is no supported claim of actual innocence asserted in Im's 37-page memorandum. Indeed, it would be problematic for him to make such a claim in view of his post-trial "safety valve" proffer, which formed the basis for the court's ability to sentence defendant without regard to the otherwise applicable mandatory minimum sentence, 18 U.S.C. § 3553(f),[2] the downward departure from the guidelines and the below guidelines sentence. His admissions,[3] which he does not now renounce or challenge, foreclose a claim of actual innocence.

Nor is the Court able to find any "cause" for the failure to assert matters that could have been raised in post-trial proceedings or on appeal. The jury reached its verdict on March 2, 2009, after a five-day trial. New counsel was appointed at Im's request on March 30, 2009, and filed a comprehensive post-trial motion on May 15, 2009, raising both errors in the trial court and ineffective assistance claims. A plenary appeal was then pursued in the Court of Appeals. "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . "impeded [his] efforts to comply with the State's [or, in this case, federal] procedural rule."'" Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (emphasis in original). "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause'." Id. "That is so. . . because the attorney is the prisoner's agent, and under "well-settled principles of agency law," the principal bears the risk of negligent conduct on the part of his agent." Id. (quoting Coleman v. Thompson, 501 U.S. 722, 753-54 (1991).

---

[2] To take advantage of the statute and corresponding guideline, he was required to "truthfully provid[e]to the Government all information and evidence the defendant has concerning the offense or offenses. . . ."

[3] Government Sentencing Memorandum, Dec. 16, 2009, at 4-8.

4

Claim 2, the alleged presentation of perjurious testimony by the government, is based upon inconsistencies in testimony, inconsistencies between 3500 material and trial testimony, the absence of corroboration for trial testimony, or mere conclusory assertions that trial testimony was false. These assertions could have been raised at trial or in the post-verdict motion. In essence, it amounts to a rehash of the trial evidence.

One item of alleged false testimony, however, could not have been known by Im at trial: the assertedly false denial by Special Agent Yoon that Special Agent Kim was then currently employed by the FBI. (Insert at 4.) Im deduces from Special Agent Kim's presence at a post-trial proffer meeting that he was employed by the FBI at the time of Special Agent Yoon's denial that Kim still worked for the FBI. But Yoon testified that Kim was his co-case agent on the case, so the jury fully understood Kim was an agent of the government at the time of the events at issue. Further, Kim's presence at a proffer session does not mean that Yoon's testimony was inaccurate or false. Assistant United States Attorney Michael D. Maimin has submitted a declaration which notes that at some point prior to trial Kim left the FBI and joined a different governmental agency. (Maimin Decl. ¶ 13.) No contrary evidence is offered by Im.

Excluding the ineffective assistance of counsel claims (Claims 4(b), 5(b), 6(b) & 8), all of Im's claims were known or knowable at the time of trial. Each could have been the subject of a timely objection or application or, in the case of those where an application was made (e.g. Claim 3, 4 and 6), a claim of error could have been raised on direct appeal. No cause—or arguable cause—is presented, except for the new claims of ineffective assistance that will be addressed separately.

The claims that could have been raised on direct appeal (Claims 1, 2, 3, 4(a), 5(a), 6(a) & 7) are procedurally barred because no claim of actual innocence has been supported and no cause for failing to raise the issues on direct appeal has been raised.

B. <u>Ineffective Assistance of Counsel</u>

1. <u>Standards</u>

Im brings new ineffective assistance claims not raised on his post-verdict motions. To succeed on a claim of ineffective assistance of counsel, a defendant bears the burden of demonstrating that "(1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." <u>Contino v. United States</u>, 535 F.3d 124, 128 (2d Cir. 2008) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)). This test is "rigorous." <u>Parisi v. United States</u>, 529 F.3d 134, 140 (2d Cir. 2008) (quotation omitted).

"To satisfy the first prong -- the performance prong -- the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" <u>Wilson v. Mazzuca</u>, 570 F.3d 490, 502 (2d Cir. 2009) (quoting <u>Strickland</u>, 466 U.S. at 687). "To give appropriate deference to counsel's independent decisionmaking," courts should "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" <u>Parisi</u>, 529 F.3d at 141 (quoting <u>Strickland</u>, 466 U.S. at 689). "Actions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." <u>Henry v. Poole</u>, 409 F.3d 48, 63 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and even strategic choices made after less than complete investigation do not

6

amount to ineffective assistance -- so long as the known facts made it reasonable to believe that further investigation was unnecessary." Id. (citation and quotation omitted).

To satisfy "the second prong -- the prejudice prong -- a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'" Wilson, 570 F.3d at 502 (quoting Strickland, 466 U.S. at 694). The level of prejudice that the defendant must establish "lies between prejudice that had some conceivable effect and prejudice that more likely than not altered the outcome in the case." Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 693).

"[A]n evidentiary hearing is not held to afford a convicted defendant the opportunity to conduct a fishing expedition." United States v. Stewart, 433 F.3d 273, 306 (2d Cir. 2006) (citation omitted). Where "it is not necessary to resolve the issues that might be the focus of an evidentiary hearing," a district court does "not abuse its discretion in refusing to conduct an evidentiary hearing." United States v. White, 972 F.2d 16, 22 (2d Cir. 1992). "If the moving papers themselves disclose the inadequacies of the defendant's case, and the opportunity to present live witnesses would clearly be unavailing, the court may rest its decision solely on the basis of the affidavits and memoranda submitted and need not resort to an evidentiary hearing." United States v. Salameh, 54 F. Supp. 2d 236, 248 (S.D.N.Y. 1999) (citing United States v. Helmsley, 985 F.2d 1202, 1210 (2d Cir. 1993)), aff'd, 16 F. App'x. 73 (2d Cir. 2001).

2. The Claims

Claim 3(b). Im complains that "[t]he Government should bring that sealing envelope at the hearing and unseal that envelope in front of the court and defense to prove the legality of the wiretap." (Insert at 12.) There was nothing improper in the manner in which certain papers relating to Title III warrants were unsealed and, thus, no issue to have been raised

by trial or appellate counsel. A defendant is entitled to be present for arraignment, every stage of the trial and sentencing. See United States v. Collins, 665 F.3d 454, 459 (2d Cir.2012); Rule 43(a)(2) Fed. R. Crim. P. The unsealing of previously sealed materials is a ministerial act, which need not be done in open court or in the presence of the parties. Im cites no authority to the contrary. Nothing in the statute requires any particular protocol for sealing. 18 U.S.C. § 2518(8)(b). ("Applications made and orders granted under this chapter shall be sealed by the judge. Custody of the applications and orders shall be wherever the judge directs.") The statue requires that the application and order be disclosed not less than 10 days before its use at trial but does not provide for any protocol as to the manner in which disclosure is physically accomplished. Id. at § 2518(9).

Claim 4(b). There was no issue of judicial bias arising out of the Court's enforcement of a long-standing motion schedule. On November 6, 2007, because discovery was then substantially complete, the Court set the date of January 14, 2008 for each defendant "to advise me whether they have any motions with regard to the materials produced in discovery or any motions on any subject. . . ." (Nov. 6, 2007, Tr. 10.) On January 14, 2008, one defendant's counsel stated an intention to file a motion to suppress certain post-arrest statements and a schedule was set; defendant's Im counsel did not seek to make any motion. (Jan. 14, 2008, Dkt Entry & Tr. 4-5.) At a March 25, 2008, conference, after the deadline for announcing any intended motions, Im made no request to file a motion. (Mar. 25, 2008, Dkt Entry & Tr.) On August 25, 2008, Mr. Cohn, Im's third lawyer, raised the possibility of belatedly making motions. The Court invited him to make a letter submission (Aug. 25, 2008, Tr. 14-15) and counsel submitted such a letter on November 4, 2008. Before ruling on whether to reopen the long closed date for scheduling motions, the Court heard argument on the contours of the

proposed motion, which would have presented a novel interpretation of the necessity requirement for a Title III wiretap, as well as an array of perceived defects, including a misspelling of Im's name. The Court allowed defendant to make a speedy trial motion because the grounds had matured after the January 14 conference but declined to reopen the schedule to allow the filing of a motion addressed to the Title III wiretap because of the resulting delay and prejudice to the government. (Nov. 19, 2008, Tr. 26-27.)

Im, on the present application, has not shown that he was prejudiced by the failure to press the issue, i.e that there was a reasonable probability that the wiretap evidence would have been suppressed which, in turn, created a reasonable probability that he would not have been convicted. Im has not shown that allowing his counsel to make the motion would have had a reasonable probability of affecting the outcome. More to the point, Im has not shown why the trial court's decision not to reopen the motion schedule evinces bias or prejudice. See Liteky v. United States, 510 U.S. 540, 555 (1984) (adverse "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.") It was not ineffective assistance for trial counsel to fail to raise it as a ground for a showing of bias or for appellate counsel to raise it as error or a ground of bias.

Relatedly, Im cites as evidence of bias an instance in which his lawyer received a rebuke in front of the jury. As reflected in the transcript, Im's counsel had received a response to a question which he believed was non- responsive. Instead of seeking a direction from the court, he purported to direct the witness: "Answer my question;" at that point, the Court interjected "Watch your tone of voice and rephrase the question, Mr. Cohn." (Feb. 24, 2009, Tr. 235.) It was well within the authority of the trial court to limit the manner of questioning. See United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003). The jury was also given the standard

instruction that "[y]ou are not to infer from . . . any of my rulings or anything else I have said or done during this trial that I have any view as to the credibility of the witnesses or how you should decide this case. (Feb. 26, 2008, Tr. 523.) Because there was no evidence of bias, it was not ineffective assistance to fail to raise bias.

Claim 5(b). Im points out that the transcript of bail proceeding does not reflect the presence of a Korean language interpreter. But that does not mean that one was not present. Nor does it mean that he was unable to understand the proceedings. Im acknowledges that he has lived in the United States for 15 years and has a limited understanding of English. (Im Affidavit ¶ 5.) Im is unable to point to any prejudice that flowed from the failure to raise the absence of an interpreter at a bail application (if that is, indeed, what occurred).

Claim 6(b). Im claims the Court improperly denied his counsel's purported request to present all of the recordings between Im and a confidential informant in their entirety and in Korean and counsel was ineffective in failing to object to the Court's ruling. The full transcript of the exchange at the final pretrial conference demonstrates that the Court made no such ruling in advance of trial and expressly declined to rule on the issue ("I think this is going to melt away in the good-faith actions of defense counsel. I'm leaving it at that." (Feb. 20, 2009, Tr. 21-22.) Thus, counsel was not ineffective in failing to raise the issue.

Claim 8. Im claims that his appellate counsel was ineffective in not raising an issue as to whether the judicial signatures on the Title III wiretaps were forgeries. Im states that his attorney "failed to raise that the government's Title III wiretap was forgery because petitioner pointed out to his trial counsel that the same judge's sign[ature] is totally different" and "because petitioner's second wiretap order was authorized by the Honorable Charles S. Haight, but apparently the two periodic reports of the Honorable Charles S. Haight's signature were

obviously different with the rest of the orders of the authorization." (Insert at 20.) Im has not shown that there were any forgeries. Judge Haight was and is on senior status and thus it would be entirely reasonable for a periodic report to go to the judge then presiding in Part I, if Judge Haight were unavailable. Im has shown no error or defect or prejudice from such a procedure.[4]

Im's claims of ineffective assistance of counsel (Claim 3(b), 4(b), 5(b), 6(b) & 8) are without merit.

CONCLUSION

The Court has considered all of the grounds asserted by defendant Im and denies his motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255. (07 Cr. 737 Dkt Entry 10/16/2012; 12 Civ. 7757 Dkt 2.) Defendant Im has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 23, 2013

---

[4] Judge Haight moved his duty station to New Haven, CT effective October 1, 2008.

11